**NOT PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

_____

No. 15-2219

_____

UNITED STATES OF AMERICA

v.

MICHAEL EUGENE GORNY,
                              Appellant

_____

On Appeal from the United States District Court
for the Western District of Pennsylvania
(D.C. No. 2-13-cr-00070-001)
District Judge:  Honorable Nora B. Fischer

_____

Submitted under Third Circuit LAR 34.1(a)
June 7, 2016

Before:  CHAGARES, KRAUSE, AND SCIRICA, *Circuit Judges*

(Opinion filed: July 12, 2016)

_____

OPINION[*]

_____

---

[*] This disposition is not an opinion of the full Court and pursuant to I.O.P. 5.7
does not constitute binding precedent.

KRAUSE, *Circuit Judge*.

Following a jury trial, Michael Eugene Gorny was convicted of being a felon in possession of a firearm and was sentenced to 110 months' imprisonment. He appeals, challenging his conviction on the ground that the District Court erred in giving an "anti-CSI" jury instruction and his sentence on the ground that the District Court erroneously applied § 2K2.1(a)(1) of the United States Sentencing Guidelines ("U.S.S.G."). We will affirm.

## I.   Facts and Procedural History[1]

Michael Gorny was charged with one count of being a felon in possession of a firearm in violation of 18 U.S.C. § 922(g)(1). The Government's evidence at trial was that on July 4, 2012, four detectives from the Pittsburgh Police Department went to Gorny's house to arrest him for an unrelated crime. Detectives Joseph Novakowski and Sheila Ladner parked their car about ten car-lengths away from the house on the other side of an empty lot, which according to their testimony, allowed them to surveil the house with an unobstructed view. Both detectives saw Gorny emerge from the house and toss a bag into the yard of the vacant house next door. After the detectives arrested Gorny, they retrieved the bag and found two handguns inside. The police unsuccessfully tested the bags and guns for fingerprints but did not test them for DNA evidence.

In defense, Gorny sought to show that the guns belonged to his friend, Edward Deakings, who was with him on July 4th but who died shortly before trial. Deakings's

---

[1] Because we write primarily for the parties, we provide background only as relevant to the issues on appeal.

former girlfriend, Marquea Davis, and her sister, Laquita Young, both testified that Deakings brought the guns to Young's house on July 3, 2012, that Young told Deakings to remove the guns from the house because there were children present, and that Deakings left the next morning. In support of the theory that someone other than Gorny, who is Caucasian, placed the guns in the yard, defense counsel elicited testimony from Gorny's neighbor, Joanna Lancaster, that on the morning of July 4th, she saw a "black gentleman [do] something close to the abandoned house next to [Gorny's]." App. 267. The defense also offered into evidence photos purportedly taken only days after Gorny's arrest that showed tall grass in the empty lot that Gorny argued would have obstructed the officers' view. Both Lancaster and Gorny's aunt, Jamie Wilsher, testified that the pictures accurately reflected the length of the grass on July 4, 2012.

In his closing, Gorny's counsel highlighted the fact that no fingerprints were recovered from the gun or the bags and that the officers did not test these items for DNA because they did not want to "develop evidence against themselves," and he urged the jury to find that the Government had not met its burden of proof. App. 351. After summation and over Gorny's objection, the District Court gave a so-called "anti-CSI" instruction,[2] telling the jury that:

> Although the government is required to prove Mr. Gorny guilty beyond a
> reasonable doubt, the government is not required to present all possible

---

[2] The instruction is so called because it combats the purported effect of the plethora of crime scene investigation shows on television that may cause jurors to expect wide-ranging forensic evidence in criminal trials. *See Robinson v. State*, 84 A.3d 69, 75 (Md. 2014).

evidence related to the case or to produce all possible witnesses who might have some knowledge about the facts of the case.

During the trial, you heard testimony of witnesses and argument by counsel that the government did not use specific investigative techniques, such as DNA analysis, the use of audio or video recording devices, or the taking of photographs. You may consider these facts in deciding whether the government has met its burden of proof because, as I told you, you should look to all of the evidence or lack of evidence in deciding whether the defendant is guilty. However, there is no legal requirement that the government use any of these specific investigative techniques or all possible techniques to prove its case. As such, there is no requirement that the officers conduct DNA analysis, use audio or video recording devices, or take photographs.

App. 376-77.

Apparently crediting the detectives' testimony, the jury convicted Gorny on September 5, 2014, after a three-day trial. On April 29, 2015, the District Court sentenced Gorny to 110 months' imprisonment, in part because it found that Gorny had two prior convictions for crimes of violence. App. 16, 570-71, 746.

## II.     Jurisdiction

The District Court had jurisdiction pursuant to 18 U.S.C. § 3231, and we have jurisdiction pursuant to 28 U.S.C. § 1291.

## III.     Analysis

Gorny alleges that the District Court erred in giving the anti-CSI instruction and in finding at sentencing that he had two prior convictions for crimes of violence justifying his sentence under § 2K2.1(a)(1). For the reasons explained below, we conclude that neither argument has merit.

4

## A.    The "Anti-CSI" Jury Instruction

When a defendant contends that a District Court erred by misstating the law, we exercise plenary review. *United States v. Stadtmauer*, 620 F.3d 238, 252 (3d Cir. 2010). On the other hand, when a defendant argues that the instruction was not justified by the evidence, we review for "abuse of discretion and view the evidence and the inferences drawn therefrom in the light most favorable to the Government." *Id.* (citation and internal quotation marks omitted). Here, Gorny challenges the instruction on both grounds. We perceive no error.

First, the proposition that the Government need not use specific investigative techniques, or all possible investigative techniques, is a correct statement of law. *See United States v. Brown*, 765 F.3d 278, 297 (3d Cir. 2014) (stating that "the Government [is] not legally obligated to conduct a fingerprint analysis of the firearm" to prove that a felon was in possession of a firearm). Indeed, Gorny concedes as much in his Reply Brief. *See* Appellant's Reply at 1. Nor did the instruction reduce the Government's burden of proof. "Due process is satisfied if the instructions, taken as a whole, accurately convey the concept of reasonable doubt to the jury." *United States v. Isaac*, 134 F.3d 199, 203 (3d Cir. 1998). Here, the challenged instruction by its terms says *nothing* about the level of proof the Government must present to convict. The District Court explained that "[y]our concern, as I have said, is to determine whether or not the evidence admitted in this trial proves the defendant's guilt beyond a reasonable doubt," App. 377, and instructed that "[a] reasonable doubt is a fair doubt based on reason, logic, common sense

5

or experience," App. 379. *See United States v. Hernandez*, 176 F.3d 719, 727-34 (3d Cir. 1999). Moreover, the District Court expressly stated that reasonable doubt may be found based on the *lack* of evidence admitted: "it is proper for the defense to point to [a] lack of evidence and you, the jury, may consider same in determining whether the government met its burden to prove the defendant's guilt beyond a reasonable doubt." App. 377; *see also* App. 379 (instructing that reasonable doubt "may arise from the evidence or from the lack of evidence"). Thus, the District Court's instructions made clear that the jury was free to find that even if the Government is not *required* to present, say, DNA evidence, the absence of such evidence could raise a reasonable doubt demanding acquittal.

In the context of the full instructions, the "anti-CSI" instruction was thus legally proper as consistently held by the Courts of Appeals. *See, e.g.*, *United States v. Saldarriaga*, 204 F.3d 50, 52-53 (2d Cir. 2000) (per curiam) (finding no error in a similar instruction); *United States v. Mason*, 954 F.2d 219, 222 (4th Cir. 1992) (stating that a similar instruction "adequately advised the jury on the putative relevance of the officers' failure to test the gun for fingerprints"); *United States v. Cota-Meza*, 367 F.3d 1218, 1223 (10th Cir. 2004) (explaining that giving an instruction materially identical to the one here is not an abuse of discretion because it accurately explains the law and expressly allows

6

the jury to consider the manner of the investigation in weighing the evidence presented or not presented).[3]

Second, we find no abuse of discretion in the District Court's conclusion that the trial evidence justified the challenged instruction in this case. The evidence justifies such an instruction when "the defendant has argued that the government's case is deficient because of the failure to use one or more specific investigative techniques." Third Cir. Model Criminal Jury Instructions § 4.14 cmt.; *see also Saldarriaga*, 204 F.3d at 52-53. Here, defense counsel argued that the Government should have "conduct[ed] more investigation" and "do[ne] the DNA test." App. 351-52. Thus, instructing the jury that the Government need not engage in particular investigative techniques simply ensured that the jury considered the evidence, or lack thereof, within the applicable framework. Indeed, in the face of defense counsel's arguments, a poorly instructed jury might have assumed that the Government was under an obligation to use those techniques, and an instruction to prevent this misapprehension was thus appropriate. In sum, we find no merit to Gorny's challenge to the "anti-CSI" instruction.

---

[3] Gorny relies not on federal authority but on *Robinson*, 84 A.3d 69, for the proposition that the instruction intruded upon the province of the jury to weigh the evidence and decide the defendant's guilt. The Maryland Court of Appeals observed in that case that instructions like the one here can "result[] in a non-neutral commentary on the evidence, or the absence of evidence, actually admitted, and invade[] the province of the jury, thus violating [a defendant's] constitutional rights to due process and a fair trial"—at least where the lack of physical evidence is a crucial issue in the case. *Id.* We are, of course, not bound by this authority and, in any event, we disagree with it, having concluded that the "anti-CSI" instruction given in this case is a neutral commentary that merely advises the jury what uses it may make of the presence or absence of evidence.

**B.      Gorny's Sentence**

Gorny relies on *Johnson v. United States*, 135 S. Ct. 2551 (2015) (holding that the residual clause of the Armed Career Criminal Act ("ACCA") is unconstitutionally vague), to challenge the finding that he had two prior convictions for "crimes of violence" as defined by U.S.S.G. § 4B1.2, which led to a higher base offense level pursuant to U.S.S.G. § 2K2.1(a)(1). Because Gorny did not object in the District Court, we review for plain error. *See Henderson v. United States*, 133 S. Ct. 1121, 1129 (2013); *Johnson v. United States*, 520 U.S. 461, 466-67 (1997) (applying the plain error standard where the defendant's argument was based on precedent decided after trial and during appeal). That is, we may not reverse unless there was "(1) error, (2) that is plain, and (3) that affects substantial rights." *Gov't of the V.I. v. Mills*, No. 13-4705, --F.3d--, 2016 WL 1425885, at *5 (3d Cir. Apr. 12, 2016) (citations and internal quotation marks omitted). "If these conditions are met, we may exercise our discretion to remedy the error, but only if the error seriously affects the fairness, integrity, or public reputation of judicial proceedings." *Id.* (citations and internal quotation marks omitted).

To consider the propriety of the application of § 2K2.1(a)(1), we first employ a modified categorical approach to ascertain which subsection of Pennsylvania's divisible aggravated assault statute Gorny violated, *see Mathis v. United States*, --S. Ct.--, 2016 WL 3434400, at *3-5 (U.S. June 23, 2016) (discussing the categorical and modified categorical approach in the context of the Armed Career Criminal Act ("ACCA")); *Descamps v. United States*, 133 S. Ct. 2276, 2281 (2013) (same); *United States v.*

*Hopkins*, 577 F.3d 507, 511 (3d Cir. 2009) (noting that "authority interpreting" the ACCA "is generally applied to" § 4B1.2); *see also United States v. Brown*, 765 F.3d 185, 191 (3d Cir. 2014), and we must then decide whether those convictions were for crimes of violence.[4]

At issue are Gorny's convictions arising from conduct occurring in 2005 (his "2005 conviction") and 2006 (his "2006 convictions"). As to Gorny's 2005 conviction, Gorny challenges the Government's assertion that he was convicted under 18 Pa. C.S. § 2702(a)(4), which provides that a person is guilty of aggravated assault when he "attempts to cause or intentionally or knowingly causes bodily injury to another with a deadly weapon," and not under 18 Pa. C.S. § 2702(a)(1), which provides that a person is guilty of aggravated assault when he "attempts to cause serious bodily injury to another, or causes such injury intentionally, knowingly or recklessly under circumstances manifesting extreme indifference to the value of human life." The Government has submitted not only a transcript of the plea proceedings, but also a signed plea agreement and judgment reflecting that the Government's motion to amend the charge to § 2702(a)(4) was granted, leaving no reasonable dispute that Gorny pled guilty to attempted aggravated assault with a deadly weapon under § 2702(a)(4). Supp. App. II at

---

[4] We need not decide whether *Johnson* invalidates the residual clause of U.S.S.G. § 4B1.2 given that the Government concedes as much.

1.[5]  As to Gorny's 2006 convictions, he does not dispute that these include convictions under both §§ 2702(a)(1) and (a)(4).

We conclude that § 2702(a)(4) is a crime of violence because it "has as an element the use, attempted use, or threatened use of physical force against the person of another." U.S.S.G. § 4B1.2(a)(1) (the "elements clause").  A crime falls within the elements clause when it contains, as an element, the use of violent force—that is, "force capable of causing physical pain or injury to another person."  *See Johnson v. United States*, 559 U.S. 133, 140 (2010); *United States v. Mahone*, 662 F.3d 651, 656 (3d Cir. 2011), *partially abrogated on other grounds by Brown*, 765 F.2d 273.  A conviction under § 2702(a)(4) requires proof that the defendant caused or attempted to cause bodily injury. The Supreme Court has explained that "the knowing or intentional causation of bodily injury necessarily involves the use of physical force."  *United States v. Castleman*, 134 S. Ct. 1405, 1414 (2014).  While *Castleman* reserved the question of whether "bodily injury" is necessarily caused by "violent force" as defined in *Johnson*, 559 U.S. at 140, we need not answer this question, for we conclude that it would not be plain error to determine that the causation of bodily injury necessarily requires the use of force capable of causing bodily injury—that is, "violent force."  *See United States v. Rice*, 813 F.3d

---

[5] We may consider these documents in determining Gorny's crimes of conviction. *See Shepard v. United States*, 544 U.S. 13, 26 (2005).  We may also take judicial notice of these documents because they do not leave any "reasonable dispute" as to Gorny's crime of conviction, *see* Fed. R. Evid. 201, even though they were not presented to the District Court.  *See United States v. Remoi*, 404 F.3d 789, 792-93 & n.1 (3d Cir. 2005) (holding in an identical circumstance that it would be "pointless to remand the case simply to have the District Judge take notice of that which we may notice ourselves").

704, 706 (8th Cir. 2016) (holding that a conviction for "caus[ing] physical injury" to another includes as an element the use of violent force capable of causing physical injury because "it is impossible to cause bodily injury without using force 'capable of' producing that result"). Further, a conviction under § 2702(a)(4) requires the knowing or intentional causation of (or attempt to cause) bodily injury, which satisfies the elements clause's mens rea requirement. *See, e.g.*, *Mahone*, 662 F.3d at 655 (explaining that to constitute a crime of violence under the elements clause, a conviction requires intentional conduct); *Tran v. Gonzalez*, 414 F.3d 464, 471 & n.7 (3d Cir. 2005).

Next, given that Gorny's 2005 conviction was for *attempted* aggravated assault, *see* App. 569, we must divine the "generic definition" of attempt "as defined by [most] States, learned treatises, and the Model Penal Code ["MPC"]," *United States v. Marrero*, 743 F.3d 389, 399 (3d Cir. 2014), and decide whether Pennsylvania's definition of attempt is substantially similar to that definition.[6] We conclude that it is.

The MPC provides that a person is guilty of attempt if he commits "an act or omission constituting a substantial step in a course of conduct planned to culminate in his commission of the crime." MPC § 5.01(1)(c). A substantial step is conduct that "is strongly corroborative of the actor's criminal purpose." *Id.* § 5.01(2). The MPC's "'substantial step' language is to be found in the great majority of the attempt statutes in the modern recodifications. Even in the absence of such a statute, the courts in several

---

[6] Gorny argues that a majority of jurisdictions do not incorporate the crime of attempt into their assault statutes, but this is irrelevant because "crime of violence" includes "attempting to commit" a crime of violence. *See* U.S.S.G. § 4B1.2.

jurisdictions have adopted the [MPC] 'substantial step' approach." 2 Wayne LaFave

Subst. Crim. L. § 11.4 (footnote omitted) (citing twenty-three statutes, including

Pennsylvania's). Several other Circuits have adopted the MPC's definition of attempt as

the generic federal definition. *See, e.g.*, *Ming Lam Sui v. I.N.S.*, 250 F.3d 105, 115-16 (2d

Cir. 2001) (stating that the generic definition of attempt requires a substantial step that "is

strongly corroborative of the actor's criminal purpose"); *United States v. Garcia-*

*Figueroa*, 753 F.3d 179, 187 (5th Cir. 2014) (following the MPC and holding that generic

attempt requires a "substantial step" that is "strongly corroborative of the actor's criminal

purpose").

Likewise, in Pennsylvania, "[a] person commits an attempt when, with intent to

commit a specific crime, he does any act which constitutes a substantial step toward the

commission of that crime." 18 Pa. C.S. § 901(a). A substantial step is an act that is more

than mere preparation and which is at least substantially similar to one that is strongly

corroborative of an actor's criminal purpose. *See* Pa. Suggested Std. Jury Instructions

(Crim), §12.901A (stating that a substantial step is an act that "strongly corroborates the

jury's belief that the person, at the time he or she did the act, had a firm intent to commit

that crime"); *cf. Commonwealth v. Allen*, 435 A.2d 1270, 1273 (Pa. Super. Ct. 1981)

(stating that a "substantial step" is "more than mere preparation"). Thus, Pennsylvania's

version of attempt is substantially similar to that of the MPC and at least twenty-two

jurisdictions, and there is no plain error in concluding that it reaches no broader than the

generic definition.[7] We therefore conclude that District Court did not plainly err in concluding that Gorny's 2005 attempted aggravated assault conviction was a crime of violence under the elements clause.

As to his 2006 convictions, Gorny raises another challenge: that his 2006 § 2702(a)(4) conviction cannot be counted as a crime of violence because it received no criminal history points under U.S.S.G. § 4A1.1 and was not counted separately from his 2006 § 2702(a)(1) conviction. *See* U.S.S.G. §§ 2K2.1 cmt. 10, 4A1.2(a)(2). Yet several Circuits have rejected similar arguments. *See United States v. Cornog*, 945 F.2d 1504, 1506 n.3 (11th Cir. 1991) (stating in dicta that the use of the longest sentence of imprisonment for the purposes of calculating criminal history makes logical sense, but, in contrast, "[i]t would be illogical . . . to ignore a conviction for a violent felony just because it happened to be coupled with a nonviolent felony conviction having a longer sentence"); *cf. United States v. Williams*, 753 F.3d 626, 639 (6th Cir. 2014). In fact, the Eighth Circuit rejected under plain error review the precise argument Gorny makes here despite a prior precedential opinion from that Circuit adopting that argument. *See United*

---

[7] In an effort to prove that Pennsylvania's version of attempt is broader than the federal definition, Gorny directs us to Ninth Circuit precedent for the persuasive value of its holding that a "substantial step occurs when a defendant's actions unequivocally demonstrate that the crime will take place unless interrupted by independent circumstances." *United States v. Gonzalez-Monterroso*, 745 F.3d 1237, 1243 (9th Cir. 2014) (internal quotation marks omitted). But that Circuit has also explained that to be "a 'substantial step,' the action in question must be 'strongly corroborative of the firmness of a defendant's criminal intent,'" *Hernandez-Cruz v. Holder*, 651 F.3d 1094, 1102 (9th Cir. 2011) (citing Model Penal Code § 5.01(2)), which only confirms our holding that Pennsylvania's definition of attempt is no broader than the federal definition.

13

*States v. Ellis*, 815 F.3d 419, 422-23 (8th Cir. 2016). [8] We therefore conclude that under these circumstances, the District Court committed no plain error when it counted his 2006 aggravated assault conviction as a crime of violence.[9]

---

[8] We also reject Gorny's argument that his 2006 conviction under § 2702(a)(4) could not be a crime of violence because he received a sentence of "no further penalty" ("NFP"). Federal law controls the meaning of "sentence," *United States v. Langford*, 516 F.3d 205, 209-10 (3d Cir. 2008), and pursuant to U.S.S.G. § 4A1.2(o), a sentence for any felony offense is counted as a prior sentence "regardless of the actual sentence imposed." Further, in Pennsylvania, a court may *sentence* a defendant to any one of multiple sentences, "and may impose them consecutively or concurrently"; possible sentences include, among other things, "[a] determination of guilt without further penalty." *See* 42 Pa. C.S. § 9721(a)(2). Finally, for the purposes of § 4B1.2, a "[p]rior felony conviction" means a "conviction for an offense punishable by death or imprisonment for a term exceeding one year, regardless of whether such offense is specifically designated as a felony and regardless of the actual sentence imposed." U.S.S.G. § 4B1.2 n.1. It would be "illogical," *Cornog*, 945 F.2d at 1506 n.3, to ignore the 2006 § 2702(a)(4) conviction as a predicate simply because he was sentenced to guilt without further penalty. *Cf. Frias-Camilo v. Att'y Gen. of U.S.*, --F.3d--, 2016 WL 3443111, at *4 (3d Cir. June 23, 2016) (holding that a sentence of NFP is a sentence under the INA). Thus, it is far from "clear" or "obvious" that a sentence of NFP precludes the conviction from counting as a crime of violence.

[9] Even if we were limited to considering Gorny's § 2702(a)(1) convictions, we would still affirm under our relaxed standard of plain error review in light of the inclusion of "aggravated assault" as a crime of violence pursuant to Application Note 1 to U.S.S.G. § 4B1.2. We have held that "offenses listed in Application Note 1 are 'enumerated' for purposes of the crime of violence analysis." *Marrero*, 743 F.3d at 399. Given that *Johnson* "does not call into question the application of the [ACCA] to [its] four enumerated offenses," *Johnson*, 135 S. Ct. at 2563, it is far from "clear" or "obvious" that *Johnson* invalidates Application Note 1. *See, e.g.*, *United States v. Jeffries*, --F.3d--, 2016 WL 2848498 (5th Cir. May 13, 2016) (per curiam) (holding that the defendant's aggravated assault conviction was a crime of violence pursuant to Application Note 1 even after *Johnson*). Moreover, we have previously held that a conviction under § 2702(a)(1), which is worded nearly identically to MPC § 211.1(2)(a), is a crime of violence because "aggravated assault" is enumerated in the relevant application note. *See United States v. McQuilken*, 97 F.3d 723, 726 n.4, 729 (3d Cir. 1996); *see also, e.g.*, *United States v. Rede-Mendez*, 680 F.3d 552, 557 (6th Cir. 2012)

Because we perceive no plain error in the application of § 2K2.1(a)(1), we affirm Gorny's sentence.

## V.    Conclusion

For the foregoing reasons, we affirm Gorny's conviction and sentence.

---

("We have recognized the [MPC] definition of aggravated assault as the generic definition for the purpose of deciding whether a crime with that label is a crime of violence, at least in states which have merged the crimes of assault and battery.").