**UNITED STATES of America**

v.

**George HOPKINS, Appellant.**

No. 06–5091.

United States Court of Appeals,
Third Circuit.

Submitted Under Third Circuit
LAR 34.1(a) Feb. 11, 2008.

Not Precedential Opinion
Filed Feb. 13, 2008.

On Remand from the Supreme Court of
the United States Jan. 21, 2009.

Filed: Aug. 21, 2009.

Frederick W. Ulrich, Esq., Office of Federal Public Defender, Harrisburg, PA, for Appellant.

Michael A. Consiglio, Esq., Office of United States Attorney, Harrisburg, PA, for Appellee.

Before: SLOVITER, SMITH, and STAPLETON, Circuit Judges.

## OPINION OF THE COURT

STAPLETON, Circuit Judge:

In *Chambers v. United States*, —— U.S. ——, 129 S.Ct. 687, 172 L.Ed.2d 484 (2009), the Supreme Court held that the crime of failure to report for incarceration, as distinguished from escape from custody, should not be classified a violent felony for purposes of the Armed Career Criminal Act, 18 U.S.C. § 924(e). Following that decision, the Supreme Court vacated our judgment affirming the conviction in this case and remanded it to us for further consideration in light of *Chambers*.

### I. *Background*

On February 15, 2006, George Hopkins was indicted on two counts. Count I charged Hopkins with possession with the intent to distribute five grams or more of cocaine base, in violation of 21 U.S.C. § 841(a)(1), and Count II charged him with being a felon in possession of a firearm, in violation of 18 U.S.C. § 922(g)(1). Hopkins pled guilty to Count I pursuant to a plea agreement in which the government agreed to recommend a three-level reduction for acceptance of responsibility, if warranted, and to move to dismiss Count II after the sentencing.

Using the 2005 Sentencing Guidelines Manual, the probation officer determined that Hopkins' base offense level was 26 pursuant to U.S.S.G. § 2D1.1(c). He added two points pursuant to U.S.S.G. § 2D1.1(b)(1) because Hopkins possessed a dangerous weapon during the commission of the offense, and six points as a victim enhancement adjustment pursuant to U.S.S.G. § 3A1.2(c)(1). Three points were deducted for acceptance of responsibility. The result was a total offense level of 31.

The probation officer then calculated an alternative offense level assuming Hopkins was determined to be a career offender, in which case the base level would be 34 pursuant to U.S.S.G. § 4B1.1. Applying the three point deduction for acceptance of responsibility, Hopkins' total offense level was 31. Hopkins therefore received the same total offense level whether applying the victim enhancement adjustment, U.S.S.G. § 3A1.2, or the career offender adjustment, U.S.S.G. § 4B1.1.

The probation officer determined that Hopkins had accumulated eighteen criminal history points based on prior crimes, plus two points pursuant to U.S.S.G. § 4A1.1(d) because Hopkins was "on escape status" when the instant offense was committed, PSR at ¶ 32, and an additional point pursuant to U.S.S.G. § 4A1.1(e) because the instant offense was committed less than two years after his release from custody. This gave Hopkins a total of 21 criminal history points, resulting in a Criminal History Category of VI. Alternatively, if Hopkins were determined to be a career offender, his Criminal History Category would automatically be Category VI. With a total offense level of 31 and a Criminal History Category of VI, Hopkins' Guidelines range was 188–235 months of incarceration.

Hopkins objected to both the career offender enhancement and the official victim enhancement, but the District Court denied both objections, found him to be a career offender, and sentenced him to 188 months. Hopkins appealed. First, he argued that the career offender enhancement did not apply because one of the predicate offenses for the career offender

classification, denominated in the PSR as an "Escape," was a 2001 non-violent "walk away" misdemeanor that did not qualify as a crime of violence. Second, he argued that the official victim enhancement did not apply because the offense of conviction was the drug charge, not the firearms charge, and there are no "victims" of drug crimes for purposes of the Sentencing Guidelines.

On Hopkins' first appeal to this Court, we affirmed the conviction and sentence imposed by the District Court. We rejected Hopkins' objection to the career offender classification calculation, relying on our earlier opinion in *United States v. Luster,* 305 F.3d 199, 202 (3d Cir.2002), for the proposition that all escape crimes are crimes of violence. We also held that, in any event, the official victim enhancement provision applied. *United States v. Hopkins,* 264 Fed.Appx. 173, 176 (3d Cir.2008). Hopkins sought relief from the Supreme Court, which granted certiorari, vacated the judgment and, as we noted above, remanded the case for reconsideration in light of its decision in *Chambers,* —— U.S. ——, 129 S.Ct. 687, 172 L.Ed.2d 484. *Hopkins v. United States,* —— U.S. ——, 129 S.Ct. 995, 173 L.Ed.2d 285 (2009).

■ We have appellate jurisdiction pursuant to 28 U.S.C. § 1291 and 18 U.S.C. § 3742(a). "Whether a particular crime constitutes a crime of violence is a question of law and the Court's review is plenary." *United States v. Dorsey,* 174 F.3d 331, 332 (3d Cir.1999) (citation omitted).

## II. *Mootness*

■ We first address a threshold issue—mootness. As we have explained, at sentencing Hopkins' designation as a career offender did not affect his offense level or his criminal history category. Even without that designation, the Guidelines would have called for the same 188 to 235 months sentencing range. The alter-

native basis for that range was affirmed by this Court, and our judgment in that respect remains effective as of the current date. It follows that a decision in Hopkins' favor on the career offender issue would not call for resentencing. Nevertheless, as the government candidly acknowledges, such a decision would materially benefit Hopkins.

Since Hopkins' sentencing, the crack cocaine sentencing guidelines have been amended. U.S.S.G. §§ 1B1.10(a)(1) and (a)(2)(A) (amended December 11, 2007). That amendment would authorize Hopkins to file a motion pursuant to 18 U.S.C. § 3582(c) for a reduction of the sentence he is currently serving if he has not been properly sentenced as a career offender. If he has been effectively designated a career offender under U.S.S.G. § 4B1.1, however, he may not seek such a reduction. *United States v. Mateo,* 560 F.3d 152, 155–56 (3d Cir.2009). Accordingly, we conclude that a justiciable controversy exists.

## III. *The Relevant Career Offender Law*

Under the Sentencing Guidelines, Hopkins is a career offender if he: (1) was at least eighteen years old when the instant offense occurred; (2) the instant offense of conviction is a violent felony or a controlled substance offense; and (3) he "has at least two prior felony convictions of either a crime of violence or a controlled substance offense." U.S.S.G. § 4B1.1(a) (2005). The first two requirements are satisfied and are not at issue here. The instant offense is a controlled substance one, and Hopkins was more than eighteen at the time of its commission. We focus therefore on the third requirement: "two prior felony convictions of . . . a crime of violence." *Id.* A "prior felony conviction" is any "adult federal or state conviction for an offense punishable by death or impris-

onment for a term exceeding one year, regardless of whether such offense is specifically designated as a felony and regardless of the actual sentence imposed." U.S.S.G. § 4B1.2 cmt. n. 1 (2005).

Hopkins concedes that a 2002 assault conviction qualifies as "a prior felony conviction" of a "crime of violence." Accordingly, the only "career offender" issue presented by this appeal is whether Hopkins' 2001 conviction for second degree misdemeanor "escape" pursuant to 18 Pa. Cons. Stat. Ann. § 5121 qualifies as a "crime of violence." If it does, then Hopkins was properly characterized as a career offender.

Under U.S.S.G. § 4B1.2(a), the term "crime of violence" means any crime punishable by imprisonment for a term exceeding one year, that:

> (i) has as an element the use, attempted use, or threatened use of physical force against the person of another, or
> (ii) is burglary of a dwelling, arson, or extortion, involves use of explosives, or otherwise involves conduct that presents a serious potential risk of physical injury to another.

The parties agree that Hopkins cannot be found to have been convicted of a "crime of violence" unless it can be said that his § 5121 conviction comes within the "residual clause" of U.S.S.G. § 4B1.2(a)(ii): "otherwise involves conduct that presents a serious potential risk of physical injury to another." The Supreme Court has cautioned that this clause must be applied with due regard for its context. It is not implicated unless the "ordinary case" falling within the crime of conviction (1) poses a "degree of risk" "roughly similar" to that posed by burglary and the other offenses enumerated in subsection (ii) and (2) is "roughly similar ... in kind" to those offenses. *Begay v. United States*, — U.S. ——, 128 S.Ct. 1581, 1585, 170 L.Ed.2d 490 (2008).

In order to determine whether the residual clause of U.S.S.G. § 4B1.2(a) is applicable, we must first determine the crime of which Hopkins was convicted. *See United States v. Harrison*, 558 F.3d 1280, 1284 (11th Cir.2009). In making this determination, the classifications we adopt must be fashioned from lines drawn by the applicable state law. *See Chambers*, 129 S.Ct. at 691 (breaking down Illinois statute into seven separate elements for the purpose of identifying the relevant conduct); *Begay*, 128 S.Ct. at 1584 (quoting New Mexico's DUI statute for the purpose of identifying the relevant crime); *James v. United States*, 550 U.S. 192, 197, 127 S.Ct. 1586, 167 L.Ed.2d 532 (2007) ("The question before the Court, then, is whether attempted burglary, as defined by Florida law, falls within ACCA's residual provision."). In other words, in residual clause cases, such as this, we pay attention to the way that the state statutory scheme identifies the relevant crime.

Once we have determined the crime of conviction, the Court must, of course, address whether that crime was a "crime of violence." Under the Supreme Court's modified categorical approach, we must resolve this issue without delving into the "particular facts disclosed by the record of conviction." *Shepard v. United States*, 544 U.S. 13, 17, 125 S.Ct. 1254, 161 L.Ed.2d 205 (2005). Rather, having determined the crime of which Hopkins was convicted, we look to the elements of that offense to identify the way in which that crime is "generally committed." *Chambers*, 129 S.Ct. at 690. "[T]he proper inquiry is whether the conduct encompassed by the elements of the offense, in the ordinary case, presents a serious potential risk of injury to another" comparable to the offenses specifically enumerated in U.S.S.G. § 4B1.2(a)(2). *James*, 550 U.S. at 208, 127 S.Ct. 1586.

## IV. *Chambers and our Prior Decision*

In *Luster*, 305 F.3d at 201, the defendant had been convicted of "simply absent[ing] himself from [his] place of confinement" without the use of force or violence. Despite the absence of any use of force or violence in effecting his departure from custody, we concluded that the defendant's crime of conviction "present[ed] a serious risk of physical injury to another." *Id.* at 202. We reasoned that any crime involving a refusal to submit to lawful state detention was a continuing crime involving a continuing effort on the part of the defendant to "evade police and avoid capture." *Id.* We concluded that "'every escape scenario is a powder keg, which may or may not explode into violence and result in physical injury to someone at any given time, but which always has the serious potential to do so.'" *Id.* (quoting *United States v. Gosling*, 39 F.3d 1140, 1142 (10th Cir.1994)).

Based on *Luster*, our original decision in this case held that the crime of escape, even escape effected without force or violence, "by its very nature 'presents a serious potential risk of physical injury to another.'" *Hopkins*, 264 Fed.Appx. at 176 (3d Cir.2008) (quoting *Luster*, 305 F.3d at 202).

In *Chambers*, the Supreme Court analyzed an Illinois statute to determine whether the petitioner, who had been convicted of failing to report to a penal institution as required by his sentence, had committed a "violent felony" under the Armed Career Criminal Act (the "ACCA"), 18 U.S.C. § 924(e)(2)(B). *Chambers*, 129 S.Ct. at 690. While the Court was not called upon to construe the career offender provision of the Sentencing Guidelines, the definition of a violent felony under the ACCA is sufficiently similar to the definition of a crime of violence under the Sentencing Guidelines[1] that authority interpreting one is generally applied to the other, as demonstrated by the Supreme Court's remand order in this case. *Hopkins*, — U.S. —, 129 S.Ct. 995, 173 L.Ed.2d 285 (2009); *see also United States v. Seay*, 553 F.3d 732, 738 (4th Cir.2009); *United States v. Herrick*, 545 F.3d 53, 58 (1st Cir.2008).

The Illinois statute involved in *Chambers* encompassed seven different criminal activities including "escape from a penal institution" and "failing to report for periodic imprisonment." *Chambers*, 129 S.Ct. at 691 (citing 720 Ill. Comp. Stat., ch. 720, § 5/31–6(a)). The Court noted that the statute criminalized distinct kinds of behaviors involving varying degrees of social

---

1. Under the ACCA:
   [T]he term "violent felony" means any crime punishable by imprisonment for a term exceeding one year, or any act of juvenile delinquency involving the use or carrying of a firearm, knife, or destructive device that would be punishable by imprisonment for such term if committed by an adult, that—
   (i) has as an element the use, attempted use, or threatened use of physical force against the person of another; or
   (ii) is burglary, arson, or extortion, involves use of explosives, or otherwise involves conduct that presents a serious potential risk of physical injury to another;

18 U.S.C. § 924(e)(2)(B). For comparison, under the United States Sentencing Guidelines:
   The term "crime of violence" means any offense under federal or state law, punishable by imprisonment for a term exceeding one year, that—
   (1) has as an element the use, attempted use, or threatened use of physical force against the person of another, or
   (2) is burglary of a dwelling, arson, or extortion, involves use of explosives, or otherwise involves conduct that presents a serious potential risk of physical injury to another.
U.S.S.G. § 4B1.2(a).

risks and carrying different punishments. It determined that, when ascertaining the offense of conviction in such a case, it is appropriate to treat the statute as creating a number of categories of offenses and to group together those offenses involving similar forms of behavior and similar degrees of seriousness. Based on the fact that the statute treated an escape from custody as a more serious offense than failure to report for imprisonment and the Court's perception that the latter involved less risk of physical harm than the former, failure to report was held to constitute an offense distinct from the offense of escape from a penal institution. Using the information in the state court record, the Court found that Chambers had pled guilty to knowingly failing to report to the county jail.

The Court then determined that the crime of failing to report was unlike the crimes of violence specifically designated as such in the concluding sentence of the definition:

> Conceptually speaking, the crime amounts to a form of inaction, a far cry from the "purposeful, 'violent,' and 'aggressive' conduct" potentially at issue when an offender uses explosives against property, commits arson, burgles a dwelling or residence, or engages in certain forms of extortion. Cf. *id.*, 553 U.S. at ——, 128 S.Ct., at 1586. While an offender who fails to report must of course be doing *something* at the relevant time, there is no reason to believe that the *something* poses a serious potential risk of physical injury. Cf. *James*, 550 U.S., at 203–204, 127 S.Ct. 1586, 167 L.Ed.2d 532. To the contrary, an individual who fails to report would seem unlikely, not likely, to call atten-

tion to his whereabouts by simultaneously engaging in additional violent and unlawful conduct.

*Chambers*, 129 S.Ct. at 692.

In response to the question whether an offender who has failed to report "is significantly more likely than others to attack, or physically to resist, an apprehender," the Court provided a negative response based in part upon a study of the Sentencing Commission which "strongly support[ed] the intuitive belief that failure to report does not involve a serious potential risk of physical injury." *Id.*[2]

*Chambers'* holding that the crime of "failure to report" does not by its nature present a serious potential risk of physical injury to another is in conflict with our previous view that any crime involving a refusal to submit to lawful state detention does present such a risk. Accordingly, accepting the lessons taught by *Chambers*, we will undertake to determine anew what Hopkins' crime of conviction was and whether that crime, by its nature, "presents a serious potential element of risk of injury to another."

## V. *Reconsideration*

### A. *The Crime of Conviction*

Section 5121 of Title 18, Pa. Cons.Stat. Ann., provides in relevant part:

> (a) Escape.—A person commits an offense if he unlawfully removes himself from official detention or fails to return to official detention following temporary leave granted for a specific purpose or limited period.
>
> * * *
>
> (d) Grading.—

---

**2.** The Court relied on available statistics showing that no failure to report crimes from the Fiscal Years 2006 and 2007 involved violence during the commission of the offense or

during the eventual capture of the offender. *See* United States Sentencing Commission, Report on Federal Escape Offenses in Fiscal Years 2006 and 2007 (2008).

(1) An offense under this section is a felony of the third degree where:

(i) the actor was under arrest for or detained on a charge of felony or following conviction of crime;

(ii) the actor employs force, threat, deadly weapon or other dangerous instrumentality to effect the escape; or

(iii) a public servant concerned in detention of persons convicted of crime intentionally facilitates or permits an escape from a detention facility.

(2) Otherwise an offense under this section is a misdemeanor of the second degree.

(e) Definition.—As used in this section the phrase "official detention" means arrest, detention in any facility for custody of persons under charge or conviction of crime or alleged or found to be delinquent, detention for extradition or deportation, or any other detention for law enforcement purposes; but the phrase does not include supervision of probation or parole, or constraint incidental to release on bail.

18 Pa. Cons.Stat. Ann. § 5121. A misdemeanor of the second degree is punishable by incarceration for a maximum term of two years. 18 Pa. Cons.Stat. Ann. § 1104(2).

The information to which Hopkins pled guilty charged him with a misdemeanor of the second degree under § 5121. Specifically, it charged that he "did unlawfully remove himself from official detention or fail to return to official detention following

temporary leave granted for a specific purpose or limited period." App. at 71.

The record of the plea hearing, which we are entitled to consider for this purpose,[3] establishes that his conviction is based on the following admission:

> This occurred on June 8th, 2001, when Steelton Highspire Police were doing a warrant service on an outstanding warrant in Steelton Borough. [Hopkins] was wanted on failure to appear on a traffic violation out of Semic's office on a parole violation capias.
>
> They did go out to the residence, and the defendant's mother was asking questions. [Hopkins] started to go into the kitchen and attempted to take out the trash throughout the back door. [Hopkins] then ran out down the back steps. When Officer Weber did pursue him, [Hopkins] jumped over the back fence, and the officer was able to grab a hold of him at that time.
>
> Mr. Hopkins, for this reason you are charged with escape. Do you understand that charge?
>
> Hopkins: Yes.
>
> The Prosecutor: How do you plead?
>
> Hopkins: Guilty.

Transcript of Proceedings at 3, *Commonwealth v. Hopkins*, No. 2191 CD 2001 (Sept. 13, 2001).[4]

Based on this admission and the fact that he was convicted of only a misdemeanor of the second degree, we can conclude that Hopkins was convicted of the crime of "unlawfully remov[ing] himself from ... arrest" on a misdemeanor charge without "employ[ing] force, threat, deadly weapon or other dangerous instrumentality." 18 Pa. Cons.Stat. Ann. § 5121(a), (d), (e).[5]

---

**3.** *See Chambers*, 129 S.Ct. at 691.

**4.** The plea colloquy was not originally transcribed but Judge Scott Evans of the Dauphin County Court of Common Pleas, in response to our request, directed its transcription. We express our appreciation.

**5.** Under Pennsylvania law, as soon as a subject is confronted by law enforcement personnel and informed of the existence of a warrant for his arrest, he or she is in "official detention" for the purposes of § 5121(a). *Commonwealth v. Santana*, 959 A.2d 450, 453 (Pa.Super.2008) (citation omitted) ("It is the warrant which extends the power of the state

### B. *Crime of Violence*

■ In determining whether Hopkins' escape crime is a crime of violence, we initially inquire whether the ordinary case of the crime of conviction poses a degree of risk of physical injury to another similar to that posed by burglary, arson, extortion, or the other offenses enumerated in U.S.S.G. § 4B1.2(a). We conclude that it does not. The typical commission of this crime does, indeed, present some potential risk of physical injury to another because it requires the arresting officer to use some degree of force to overcome the offender's behavior. Nevertheless, given that the detention relates to an unadjudicated misdemeanor, we would expect that the force which the officer would be willing and/or required to employ would present materially less of a potential for physical injury to the officer than the potential for physical injury presented by the enumerated offenses.

We would also conclude that an ordinary case falling within the crime of conviction is not "similar in kind" to the enumerated offenses. As the Supreme Court stressed in *Begay*, "[t]he listed crimes all typically involve purposeful, violent, and aggressive conduct." 128 S.Ct. at 1586 (internal quotation marks and citation omitted). If the crime of conviction is materially different in terms of these characteristics, it does not come within the "residuary clause." To be sure, escape from detention is purposeful conduct. Nevertheless, because the escape involved in the crime of conviction is unaccompanied by "force, threat, deadly weapon or other dangerous instrumentality," we would conclude that it is conduct materially less violent and aggressive than the enumerated offenses.

We find support for our analysis and this conclusion in *Harrison*, 558 F.3d at 1293. Based on the distinctions drawn in Florida's "Willful Fleeing Statute," the Court determined that the "behavior ordinarily underlying the crime [of conviction] involve[d] only this conduct: (1) a law enforcement vehicle, with its siren and lights activated, signals the motorist to stop and (2) the motorist willfully refuses or fails to stop the vehicle." *Id.* It did not involve flight at high speed or wanton disregard for persons or property which would constitute a more serious crime prohibited by the same section. The Court noted that the government had the burden of proof and expressed doubt that the crime of conviction as ordinarily committed posed a risk of physical injury to another comparable to that of the enumerated offenses. It held, however, that the crime of conviction was materially different "in kind" from the enumerated offenses:

> Even assuming a serious potential risk of physical injury exists in a § 316.1935(2) violation, *Begay* requires courts to further address whether the crime is similar "in kind" to burglary, arson, extortion, and the use of explosives. *Begay*, 128 S.Ct. at 1585. For § 316.1935(2) to be "similar in kind" to those enumerated offenses, the conduct underlying the crime must be "purposeful, violent, and aggressive." *Chambers*, 129 S.Ct. at 692; *Begay*, 128 S.Ct. at 1586.

\* \* \*

over the defendant ... and completes the required element of official detention...."); *Commonwealth v. Colon*, 719 A.2d 1099, 1101 (Pa.Super.1998) ("At the point [Colon] had been informed the officers had a warrant for his arrest and that he was under arrest, [he] was detained by a show of authority whereby he could not reasonably believe that he was free to leave."). While Hopkins did not expressly acknowledge at his plea hearing that he had been advised of the warrant for his arrest, the fair implication from his flight and his plea is that he was so advised.

We have no trouble concluding that the willful decision not to follow a police officer's signal is "purposeful." And it cannot, under *Chambers,* be characterized as either "passive" or a crime of "inaction." 129 S.Ct. at 691–92. The motorist makes a deliberate choice to disobey a police officer's signal. Disobedience by continuing to drive at any speed is not passive. The conduct is purposeful and intentional.

However, disobeying a police officer's signal and continuing to drive on, without high speed or reckless conduct, is not sufficiently aggressive and violent enough to be like the enumerated ACCA crimes.

\* \* \*

A person who refuses to stop and drives on, without anything more, is, under Florida law, a felon. But that kind of person is not, in our mind, cut from the same cloth as burglars, arsonists, extortionists, or those that criminally detonate explosives. The fleeing crime in § 316.1935(2) seems more appropriately characterized as the crime of a fleeing coward—not an armed career criminal bent on inflicting physical injury. *Harrison,* 558 F.3d at 1295–96. With respect to violence and aggression, we find the crime of conviction before us comparable to that before the Court in *Harrison. See also United States v. Collier,* 493 F.3d 731, 736–37 (6th Cir.2007) (holding that defendant's conviction under a state statute that defines escape to include leaving custody without having been discharged is not categorically a violent felony); *United States v. Lowery,* 599 F.Supp.2d 1299 (M.D.Ala.2009) (determining that the Alabama statute for third degree escape, which applies when the escapee employed no physical force, does not create a serious potential risk of physical injury, and does not address conduct that is similar in kind to the enumerated offenses); *United States v. Nichols,* 563 F.Supp.2d 631, 636

(S.D.W.V.2008) (holding that the offense of escape under West Virginia law is not "'roughly similar' to burglary of a dwelling, arson, extortion, or crimes involving explosives").

We therefore conclude that Hopkins' 2001 conviction for violating 18 Pa. Cons. Stat. Ann. § 5121 was not a conviction for a "crime of violence" within the meaning of U.S.S.G. § 4B1.1 and, accordingly, that he was not properly determined to be a "career offender" under that section.

## VI. *Conclusion*

This conclusion does not require any change in Hopkins' sentence for the offense at issue here because, as we previously held, Hopkins was properly subject to the official victim enhancement. *Hopkins,* 264 Fed.Appx. at 176. We will therefore again affirm the sentence imposed by the District Court. However, that Court's designation of Hopkins as a career offender under U.S.S.G. § 4B1.1 shall henceforth be without effect. Judge Sloviter concurs in the judgment.