**UNITED STATES of America**

v.

**Demetrius FORD, Appellant.**

**No. 07–4480.**

United States Court of Appeals, Third Circuit.

Submitted Under Third Circuit LAR 34.1(a) Jan. 12, 2010.

Opinion Filed: Feb. 4, 2010.

Robert L. Eberhardt, Esq., Kelly R. Labby, Esq., Office of the United States Attorney, Pittsburgh, PA, for United States of America.

Renee Pietropaolo, Esq., Office of Federal Public Defender, Pittsburgh, PA, for Appellant.

Before: SCIRICA, Chief Judge, BARRY and SMITH, Circuit Judges.

## OPINION

BARRY, Circuit Judge.

Demetrius Ford appeals his designation as an armed career criminal, arguing that his conviction for the Pennsylvania crime of escape from official detention does not constitute a violent felony. We will vacate Ford's sentence and remand to the District Court for re-sentencing.

## I.

Ford pled guilty to possession of a firearm as a convicted felon, in violation of 18 U.S.C. § 922(g)(1). The District Court determined that it was appropriate to apply the Armed Career Criminal Act ("ACCA"), which provides for a minimum sentence of fifteen years imprisonment for defendants convicted of violating § 922(g) who have three previous convictions for violent felonies or serious drug offenses. 18 U.S.C. § 924(e)(1). Ford did not dispute that he had two past convictions for serious drug offenses, but disputed that his 1994 conviction (by guilty plea) for the Pennsylvania crime of escape from official detention constituted a violent felony. The District Court imposed the mandatory minimum sentence of fifteen years imprisonment, as well as five years of supervised release. Ford timely appealed.[1]

## II.

"Violent felony" is defined as follows:

[T]he term "violent felony" means any crime punishable by imprisonment for a term exceeding one year, or any act of juvenile delinquency involving the use or carrying of a firearm, knife, or destructive device that would be punishable by imprisonment for such term if committed by an adult, that—

(i) has as an element the use, attempted use, or threatened use of physical force against the person of another; or

(ii) is burglary, arson, or extortion, involves use of explosives, or otherwise involves conduct that presents a serious potential risk of physical injury to another.

18 U.S.C. § 924(e)(2)(B). The parties agree that only the second clause, commonly described as the residual clause, is at issue here. The District Court, in concluding that Ford's escape conviction was a violent felony, relied on our decision in *United States v. Luster*, 305 F.3d 199 (3d Cir.2002). In *Luster*, we held that the Pennsylvania crime of escape constitutes a "crime of violence" under the Sentencing Guidelines[2] because "every escape scenario is a powder keg, which may or may not explode into violence and result in physical injury to someone at any given time, but which always has the serious potential to do so." 305 F.3d at 202 (quoting *United States v. Gosling*, 39 F.3d 1140, 1142 (10th Cir.1994)).

The Supreme Court's recent decision in *Chambers v. United States*, —— U.S. ——, 129 S.Ct. 687, 172 L.Ed.2d 484 (2009),[3] however, "is in conflict with our previous view that any crime involving a refusal to submit to lawful state detention does present [a serious potential risk of physical injury to another]." *United States v. Hopkins*, 577 F.3d 507, 512 (3d Cir.2009). In *Chambers*, the Supreme Court examined the Illinois escape statute, which criminalized a variety of conduct. It was clear from the defendant's charging document that he had pled guilty to knowingly failing to report for periodic imprisonment. The Court concluded that failure to report is a "separate crime" from escape. *Chambers*, 129 S.Ct. at 691. Because failure to report does not involve conduct that presents a

---

**1.** The District Court had jurisdiction pursuant to 18 U.S.C. § 3231, and we have jurisdiction pursuant to 18 U.S.C. § 3742(a) and 28 U.S.C. § 1291.

**2.** "[T]he definition of a violent felony under the ACCA is sufficiently similar to the definition of a crime of violence under the Sentenc-ing Guidelines that authority interpreting one is generally applied to the other. . . ." *United States v. Hopkins*, 577 F.3d 507, 511 (3d Cir. 2009).

**3.** We stayed Ford's appeal pending the Supreme Court's decision in *Chambers*.

serious potential risk of physical injury to another and is "a far cry from the purposeful, violent, and aggressive conduct" exemplified by the residual clause's enumerated offenses, the Court held that it is not a violent felony under ACCA. *Id.* at 691–92 (internal quotations and citation omitted).

*Chambers* does not address whether escape from custody crimes are violent felonies, except by way of distinguishing such crimes from failure to report crimes. The Supreme Court noted that "the behavior that likely underlies a failure to report would seem less likely to involve a risk of physical harm than the less passive, more aggressive behavior underlying an escape from custody." *Chambers,* 129 S.Ct. at 691. The Court framed the question as "whether such an offender is significantly more likely than others to attack, or physically to resist, an apprehender, thereby producing a 'serious potential risk of physical injury.'" *Id.* at 692. It also considered data prepared by the Sentencing Commission which indicated that none of the 160 failure to report/return cases in 2006 and 2007 involved violence (although five of these offenders were armed). *Id.* at 692–93.[4]

## III.

Before we can determine whether an offense qualifies as a violent felony, we must identify the crime of which the defendant was convicted. *Hopkins,* 577 F.3d at 510 (noting that in residual clause cases, we must "pay attention to the way that the state statutory scheme identifies the rele-

vant crime"). The Pennsylvania escape statute provides:

> A person commits an offense if he unlawfully removes himself from official detention *or* fails to return to official detention following temporary leave granted for a specific purpose or limited period.

18 Pa. Cons.Stat. § 5121(a) (emphasis added).[5] Thus, the same statute criminalizes both "escape from custody" and "failure to return to custody." It is clear, after *Chambers,* that the latter is not a violent felony. *See Chambers,* 129 S.Ct. at 691 (characterizing "failing to report to a penal institution," "failing to report for periodic imprisonment," "failing to return from furlough," and "failing to return from work and day release" all as "failure to report" crimes distinct from escape from custody crimes). Therefore, it is critical to determine which of the two offenses Ford pled guilty to committing. It is not possible to do so based on the present record.

To determine whether Ford pled guilty to the crime of unlawfully removing himself from official detention, we consider whether Ford "necessarily admitted" the elements of this offense when he pled guilty. *Shepard v. United States,* 544 U.S. 13, 26, 125 S.Ct. 1254, 161 L.Ed.2d 205 (2005). Courts may consider only "the terms of the charging document, the terms of a plea agreement or transcript of colloquy between judge and defendant in which the factual basis for the plea was confirmed by the defendant, or to some comparable judicial record of this information." *Id.;  see also United States v. Siegel,* 477

---

4. In contrast, of the 64 "leaving secure custody" cases, 15.6% involved force, 31.3% involved a dangerous weapon, and 10.9% resulted in injury. *Chambers,* 129 S.Ct. at App. A.

5. "Official detention" is defined as: "arrest, detention in any facility for custody of persons under charge or conviction of crime or al-

leged or found to be delinquent, detention for extradition or deportation, or any other detention for law enforcement purposes; but the phrase does not include supervision of probation or parole, or constraint incidental to release on bail." 18 Pa. Cons.Stat. § 5121(e).

F.3d 87, 92 (3d Cir.2007) ("Commonly, the best way to resolve the question raised by a conviction under a statute phrased in the disjunctive . . . will be to look to the charging instrument or to the plea colloquy.").

The information charging Ford with escape is inconclusive because it tracked the statutory language, including both removing oneself from detention and failing to return to detention. Moreover, the arrest warrant affidavit and criminal complaint, both of which were submitted to the District Court at sentencing, are not documents that may be considered for purposes of the ACCA analysis because Ford did not confirm the facts contained in these documents or plead guilty pursuant to them. *See Shepard,* 544 U.S. at 25–26, 125 S.Ct. 1254 (noting that a court's consideration of police reports in classifying an offense implicates the Sixth and Fourteenth Amendments); *Evanson v. Att'y Gen.,* 550 F.3d 284, 293 n. 7 (3d Cir.2008) (a criminal complaint that has been superseded by an information is not the relevant charging document to be considered under the modified categorical approach).

The government has asked us to supplement the record with the transcript of the plea hearing at which Ford pled guilty to the Pennsylvania escape statute and consider, in the first instance, the colloquy between Ford and the judge confirming

the factual basis for the plea, a request that is hotly disputed. We decline to do so. We will, however, remand to the District Court for it to decide whether to permit the government to now support its contention that Ford qualifies as an armed career criminal with the colloquy it chose not to submit at sentencing. *See United States v. Dickler,* 64 F.3d 818, 831–32 (3d Cir.1995). On remand, the government must present a "persuasive reason why fairness . . . requires" that the District Court consider the colloquy. *Id.* at 832. The District Court should exercise its "informed discretion" in determining whether such consideration is appropriate. *Id.* at 831; *cf. United States v. Johnson,* 587 F.3d 203, 213 (3d Cir.2009) (directing the district court to consider the plea colloquy transcript on remand, based on the "particular circumstances" of that case, where the government had been unable to present the colloquy at sentencing and it had only later become available for review).

If the District Court decides that it is appropriate to consider the colloquy, it should then determine whether the colloquy establishes that Ford pled guilty to escape from custody or failure to return to custody, and whether that offense is a violent felony, by employing the analysis required by *Begay v. United States,* 553 U.S. 137, 128 S.Ct. 1581, 170 L.Ed.2d 490 (2008), and *Chambers.*[6] *See Hopkins,* 577

---

6. Neither case had been decided at the time of Ford's sentencing. We have discussed *Chambers* above. In *Begay,* the Supreme Court held that courts, in determining whether the offense at issue involves conduct that presents a serious potential risk of physical injury to another, must consider if it is "roughly similar, in kind as well as in degree of risk posed, to the examples [burglary, arson, extortion, and use of explosives] themselves." 128 S.Ct. at 1585. The listed offenses are similar in that they "all typically involve purposeful, violent, and aggressive conduct." *Id.* at 1586 (internal quotations and citation omitted). To determine whether

a particular offense qualifies as a violent felony, courts must "consider the offense generically" and "examine it in terms of how the law defines the offense and not in terms of how an individual offender might have committed it on a particular occasion." *Id.* at 1584; *see also James v. United States,* 550 U.S. 192, 202, 208, 127 S.Ct. 1586, 167 L.Ed.2d 532 (2007) (noting that courts must consider "the ordinary case" and not "the specific conduct of this particular offender"). "[*Shepard's* ] rule is not meant to circumvent the categorical approach by allowing courts to determine whether the actual conduct of the individual defendant constituted a pur-

F.3d at 515 (holding that a misdemeanor escape conviction under the Pennsylvania statute is not a crime of violence).

## IV.

Accordingly, we will vacate Ford's sentence and remand to the District Court for re-sentencing.[7]

poseful, violent and aggressive act." *Johnson*, 587 F.3d at 208 (quoting *United States v. Smith*, 544 F.3d 781, 786 (7th Cir.2008)).

7. We believe it appropriate to address certain issues Ford has raised so that they need not distract the parties at re-sentencing. First, Ford's argument that escape cannot be a violent felony because it is not a crime against property is without merit. *Johnson*, 587 F.3d at 211 n. 9 ("Noting in *Begay* unequivocally establishes that the residual clause is restricted to crimes against property, and no case law interpreting that provision post-*Begay* suggests as much."). Second, Ford states that he "continues to object under the Fifth and Sixth Amendments to any statutory sentencing enhancements based on prior convictions that were not charged in the indictment, or admitted, or proven to the jury beyond a reasonable doubt." (Appellant's Op. Br. at 14.) We have repeatedly rejected this argument. *See, e.g., United States v. Coleman*, 451 F.3d 154, 159 (3d Cir.2006) (citing *Almendarez-Torres v. United States*, 523 U.S. 224, 118 S.Ct. 1219, 140 L.Ed.2d 350 (1998)). Finally, Ford argues that 18 U.S.C. § 922(g) is unconstitutional, but acknowledges that this issue is controlled by our decision in *United States v. Singletary*, 268 F.3d 196 (3d Cir.2001), and raises it only for purposes of further appellate review.