With respect to Defendant's resentencing, the Government acknowledges that he is no longer subject to the mandatory minimum or the sentencing enhancement prescribed by the ACCA. However, the Government maintains that Defendant's aggravated assault conviction constitutes a "crime of violence," as defined in § 4B1.2(a) of the Sentencing Guidelines, which, alongside his prior drug conviction, subjects him to a career offender enhancement under § 4B1.1.[7] Defendant challenges the enhancement on the grounds *728 that not all subsections of Pennsylvania's aggravated assault statute, 18 Pa. Cons. Stat. § 2702(a), satisfy § 4B1.2(a) and there are no available records that establish the specific subsection of the statute under which Defendant was convicted.
The Court heard argument during Defendant's resentencing hearing on October 2, 2017 and continued the hearing so that the issue could be fully considered.
In a Supplemental Sentencing Report, amended on October 5, 2017 ("Amended Supplemental Sentencing Report"), the Probation Office calculated Defendant's Guidelines range based on the assumption that he has no predicate crime of violence but provided an alternative range under the Government's approach.[8] The disparity between the two calculations is substantial: in the absence of a predicate crime of violence, Defendant's Guidelines range is 37-46 months; with a predicate crime of violence, the resulting Guidelines range would be 151-188 months.[9]
II. DISCUSSION
A. § 4B1.2(a)
Section 4B1.2(a) of the United States Sentencing Guidelines, as effective November 1, 2016, defines a "crime of violence" as "any offense under federal or state law, punishable by imprisonment for a term exceeding one year," that-
(1) has as an element the use, attempted use, or threatened use of physical force against the person of another, or
(2) is murder, voluntary manslaughter, kidnapping, aggravated assault, a forcible sex offense, robbery, arson, extortion, or the use or unlawful possession of a firearm described in 26 U.S.C. § 5845(a) or explosive material as defined in 18 U.S.C. § 841(c).[10]
The first prong of this section (the "force clause") applies to any crime that requires the "use of physical force against the person of another," (whether actual, attempted, or threatened) as an essential element. The second prong (the "enumerated offenses clause") applies to any crime that "substantially corresponds" to, and does not "sweep[ ] more broadly than," the "generic definition" of one of the listed *729 crimes.[11] To determine the elements of a generic offense, courts may look to the definition of the crime used by the states, learned treatises, and the Model Penal Code.[12]
In determining whether a prior conviction falls under § 4B1.2(a), courts have employed the "categorical" and "modified categorical" approaches outlined in the ACCA context.[13] Typically, under the categorical approach, courts may "look only to the statutory definitions-i.e. , the elements-of a defendant's prior offenses,"[14] and consider whether "the least culpable conduct hypothetically necessary to sustain conviction under the statute" falls under either clause of § 4B1.2(a).[15] However, when the court is confronted with a statute that is "divisible,"-that is, when the statute "comprises multiple, alternative versions of the crime," a modified categorical approach applies.[16] Under this approach, a court may look to a limited set of judicial records, such as the charging document and the plea agreement and colloquy, to determine the elements of the crime of conviction, and assess whether those elements satisfy either prong of § 4B1.2(a).[17] These records are commonly referred to as Shepard documents.
B. Defendant's Aggravated Assault Conviction
Defendant was convicted of aggravated assault in 1990 at the age of 18. At the time, aggravated assault was defined under 18 Pa. Cons. Stat. § 2702(a) as follows:
(a) Offense defined. A person is guilty of aggravated assault if he:
(1) attempts to cause serious bodily injury to another, or causes such injury intentionally, knowingly or recklessly under circumstances manifesting extreme indifference to the value of human life;
(2) attempts to cause or intentionally, knowingly, or recklessly causes serious bodily injury to [a police officer or other member of a protected class] while in the performance of duty;
(3) attempts to cause or intentionally or knowingly causes bodily injury to [a police officer or other member of a protected class] in the performance of duty;
*730 (4) attempts to cause or intentionally or knowingly causes bodily injury to another with a deadly weapon; or
(5) attempts to cause or intentionally or knowingly causes bodily injury to [a designated school employee] while acting in the scope of his or her employment or because of his or her employment relationship to the school.[18]
This Court has previously ruled that § 2702(a) is a divisible statute under which each subsection is a separate and alternative version of the crime, and so in assessing whether the conviction constitutes a "crime of violence," courts may limit their analysis to the specific subsection of the statute under which a defendant was convicted.[19] Here, however, the Shepard documents for Defendant's aggravated assault conviction have been lost, preventing either party from establishing the specific elements of his crime of conviction. Therefore, Defendant's prior conviction cannot be a "crime of violence," unless § 2702(a) in its entirety, including each of its subsections, satisfies § 4B1.2(a).[20]
A few aspects of the statute will be particularly relevant to the Court's analysis:
First, the subsections of § 2702(a) differ in the minimum level of mens rea required. Subsections (a)(3), (a)(4), and (a)(5) are all specific-intent offenses because they require that injury be caused "intentionally or knowingly." In contrast, subsections (a)(1) and (a)(2) require less culpable states of mind: Subsection (a)(1) requires recklessness "with extreme indifference to the value of human life," often referred to as "depraved heart" recklessness; subsection (a)(2) requires only simple recklessness.
Second, under Pennsylvania law, an aggravated assault under subsection (a)(1) of the Pennsylvania statute can be committed through omission without the affirmative threat or use of force. Specifically, in Commonwealth v. Thomas , the Superior Court of Pennsylvania held that a woman's conviction for aggravated assault under § 2701(a)(1) could be sustained based on her failure to feed and seek medical attention for her four-year old son, although there was no evidence that she used or threatened force against him.[21]
Third, although subsections (a)(1) and (a)(4) of § 2702(a) track the generic elements of "aggravated assault" as defined in the Model Penal Code, subsections (a)(2), (a)(3), and (a)(5) of the statute criminalize conduct that exceeds the scope of the generic offense when the conduct involves injury to members of protected classes of people (law enforcement and school employees).[22]
*731 In light of the third point, the parties agree that § 2702(a) as a whole exceeds the scope of the generic definition of "aggravated assault," and therefore does not satisfy the "enumerated clause" of the § 4B1.2. The Government rests its argument solely on the force clause, and notably, does not argue that § 2702(a) can qualify as a "crime of violence" if only some of its subsections satisfy the force clause while the rest satisfy the enumerated offense clause.[23] Accordingly, the Court will limit its analysis to whether § 2702(a) in its entirety satisfies the force clause.
Defendant argues that § 2702(a) falls outside the scope of the force clause in two ways. First, and primarily, Defendant argues that the term "use of physical force against the person of another" in the force clause requires specific intent, and therefore does not encompass subsections (a)(1) and (a)(2) of § 2702(a), which criminalize reckless conduct. Additionally, and in the alternative, Defendant argues that the term "use of physical force" requires affirmative conduct, and therefore does not encompass subsection (a)(1), which criminalizes omissions.
The Court will first examine whether the language of the force clause extends to acts committed with the minimum mens rea required under § 2702(a), i.e. simple recklessness, and will reach alternative arguments if necessary.
C. Mens Rea Under the Force Clause
In asserting that the language of the force clause excludes reckless conduct, Defendant relies on long-standing Third Circuit precedent construing the term "use of physical force against the person of another." In response, the Government relies on United States v. Voisine , which construed a similarly-worded definition of "misdemeanor crime of domestic violence."[24] For the reasons explained below, the Court holds that Voisine has not abrogated established Third Circuit law, and therefore the force clause of § 4B1.2(a) does not encompass the reckless conduct criminalized by Pennsylvania's aggravated assault statute.
1. Third Circuit Precedent
The Third Circuit has consistently held that "the use of physical force against the person of another," requires intentional, rather than reckless, conduct. In 1992, the court in United States v. Parson addressed whether reckless endangerment under Pennsylvania law was a "crime of violence" under an earlier version of § 4B1.2.[25] In discussing the relationship between the text of § 4B1.2 and the earlier-enacted definition of "crime of violence" in 18 U.S.C. § 16, the court stated that "[u]se of physical force is an intentional act, and therefore the first prong of both definitions requires specific intent to use force."[26] The court contrasted the phrase "use of physical force," which remains in the current version of § 4B1.2(a)(1), with the text of the residual clause, which was directed to offenses that "otherwise involves conduct that presents a serious potential risk of physical injury to another," and has since been deleted from § 4B1.2 :
*732 In contrast, under the second prong of the revised definition, criminals whose actions merely risk causing physical injury may have a lower mens rea of "pure" recklessness: they may lack an intent, desire or willingness to use force or cause harm at all. For example, a parent who leaves a young child unattended near a pool may risk serious injury to the child, but the action does not involve an intent to use force or otherwise harm the child. Similarly, a drunk driver risks causing severe injury to others on the road or in the car, but in most cases he or she does not intend to use force to harm others.[27]
The court's language makes clear that the "use of physical force" in the first prong of § 4B1.2 does not encompass conduct where the offender was merely reckless with respect to potential harm. Although the court ultimately held that reckless endangerment was a "crime of violence" under the residual clause, it noted, in a discussion directed to the Sentencing Commission, that a "career offender" enhancement based on purely reckless conduct was inconsistent with the original purpose of the provision: "The term 'career offender' implies an ongoing intent to make a living through crime, and it is doubtful that one can make a career out of recklessness."[28]
The Third Circuit has since repeated this narrow construction of the "use of physical force" in interpreting both § 4B1.2(a) and other statutes that are identically, or nearly-identically worded. In Tran v. Gonzales , the Court analyzed the "plain language" of 18 U.S.C. § 16(a),[29] and held that the " 'use' of force requires specific intent to employ force, and not mere recklessness as to causing harm."[30] After surveying the dictionary definitions of the term "use," the court concluded that "[t]hese definitions show an obvious commonality: the 'use' of force means more than the mere occurrence of force; it requires the intentional employment of that force, generally to obtain some end."[31]
Citing Tran , the Third Circuit held in Popal v. Gonzales that "[i]t is now settled law in this Circuit that an offender has committed a 'crime of violence' under 18 U.S.C. § 16(a) only if he acted with an intent to use force."[32] On this basis, the court held that Pennsylvania's simple assault statute, which requires a minimum mens rea of simple recklessness, rather than intent, is not a "crime of violence" under § 16(a).[33] Subsequently, in United States v. Otero , the court extended its holding in Popal to the definition of "crime of violence" in U.S.S.G. § 2L1.2, which, at the time, incorporated the language of the force clause in § 4B1.2(a).[34] Relying on this line of cases, multiple district courts in this circuit have held that aggravated assault under § 2702(a)(1) does not satisfy the force clause of the definition of "violent offender" in the ACCA (which is identical *733 to § 4B1.2(a)(i) ) because that subsection of the Pennsylvania statute criminalizes reckless conduct.[35] More recently, Third Circuit opinions analyzing the language of § 4B1.2(a)(1) itself continue to emphasize the need for "intentional" conduct.[36]
2. Voisine v. United States
Against this extensive body of Third Circuit law, the Government rests its argument on the Supreme Court's 2016 decision in Voisine v. United States. In Voisine , the Supreme Court held that the term "misdemeanor crime of domestic violence" in 18 U.S.C. § 922(g)(9), which is defined in § 921(a)(33)(A) as a misdemeanor that "has, as an element, the use or attempted use of physical force, or the threatened use of a deadly weapon, committed by [a domestic relation] of the victim," encompasses crimes with a mens rea of recklessness.[37] The Supreme Court concluded that the ordinary usage of the word "use" in § 921(a)(33)(A) did not limit the provision to specific intent crimes: "A person who assaults another recklessly 'use[s]' force, no less than one who carries out that same action knowingly or intentionally."[38] To illustrate its reasoning, the Court pointed to examples of reckless conduct in the domestic violence context, such as a person who "throws a plate in anger against the wall near where his wife is standing" or "slams the door shut with his girlfriend following close behind," that are ordinarily understood to involve the "use" of force.[39] The Court further concluded that construing § 922(g)(9) to exclude crimes committed with a reckless state of mind would "substantially undermine the provision's design" because Congress enacted § 922(g)(9) in order to prohibit "domestic abusers convicted under run-of-the-mill misdemeanor assault and battery laws" from possessing guns and "fully two-thirds of such state laws extend to recklessness."[40]
The Government urges this Court to apply the construction of § 921(a)(33)(A) adopted in Voisine to the force clause of § 4B1.2. The Government acknowledges there is no Third Circuit precedent for doing so. To the contrary, the Third Circuit's language in United States v. Chapman , which was decided in 2017 after Voisine , strongly suggests that the Parson line of cases remains intact.[41] Nonetheless, the Government cites to opinions from the Fifth, Eighth, and Tenth Circuit Courts of Appeals, which have extended Voisine to § 4B1.2(a) and the ACCA.[42] These opinions *734 do not persuade the Court that it should depart from long-standing Third Circuit law. Instead, the Court has determined that the reasoning of the First Circuit in United States v. Bennett , which relies on differences in the texts, contexts, and purposes of § 4B1.2(a)(1) and 18 U.S.C. § 921(a)(33)(A), is more consistent with Third Circuit precedent.[43]
First, the text of U.S.S.G. § 4B1.2(a)(1) differs from the text of 18 U.S.C. § 921(a)(33)(A) in at least one respect that is relevant to the question of intent. Section 4B1.2(a)(1) requires the "attempted, threatened, or actual use of physical force against the person of another. "[44] In contrast, § 921(a)(33)(A) does not require the use of force against anyone or anything. This difference in text makes the "ordinary usage" reasoning in Voisine less intuitive in reading § 4B1.2(a)(1). For example, a person who engages in indiscriminate dangerous conduct in a domestic violence setting, such as the throwing of plates or the slamming of a door in the proximity of a family member, can ordinarily be understood to be "us[ing] physical force." But it is far more tenuous to argue that such a person is "us[ing] physical force against the person of another" when the offender did not specifically intend to direct the harmful conduct toward any person.[45]
Second, as the Supreme Court has acknowledged, including in the Voisine opinion itself, the unique context and purpose of § 921(a)(33)(A) warrant a different construction from other similarly-worded statutes.[46] The language of § 921(a)(33)(A), as *735 incorporated in § 922(g)(9), was enacted to keep domestic abusers from owning guns by specifically capturing a category of state law offenses, i.e. "garden-variety assault or battery misdemeanors," which in most states, encompass reckless infliction of bodily harm.[47] In contrast, § 4B1 of the Sentencing Guidelines serves to keep people who are deemed "career" offenders off the street, excluding them from the community by adding substantial enhancements to their Guidelines range for sentencing.[48] There is no history that suggests § 4B1.2(a) was directed to recklessness offenses. Rather, the current version of § 4B1.2 omits the "residual clause" that was previously expressly directed toward reckless conduct, i.e. "conduct that presents a serious potential risk of physical injury to another."[49] As the Third Circuit recognized in Parson , the inclusion of recklessness crimes among the predicate offenses for establishing "career offender" status is incongruous with the term "career offender," which "implies an ongoing intent to make a living through crime."[50]
In light of these differences between § 922(a)(33)(A) and § 4B1.2(a)(1), the Court is convinced that it should not extend Voisine to § 4B1.2(a) in contravention of established Third Circuit case law. Moreover, to the extent Voisine created any ambiguity concerning the scope of § 4B1.2, the rule of lenity requires that the Court resolve the ambiguity in Defendant's favor.[51] Accordingly, the Court holds that the minimum mens rea of simple reckless required under Pennsylvania's aggravated assault statute, 18 Pa. Cons. Stat. § 2702(a), does not satisfy the force clause of § 4B1.2(a).
This holding is sufficient in this case for the Court to conclude that Defendant's prior conviction of aggravated assault does not qualify as a predicate "crime of violence" that subjects him to a career offender enhancement under § 4B1.1.[52] The Court therefore declines to decide whether *736 the slightly heightened mens rea of "reckless[ness] ... under circumstances manifesting an extreme indifference to the value of human life" required under § 2702(a)(1) would satisfy the force clause. The Court also declines to address Defendant's alternative argument that the omissions criminalized in § 2702(a)(1) exceed the scope of the force clause.[53]
III. CONCLUSION
For all the reasons above, Defendant's conviction for aggravated assault under 18 Pa. Cons. Stat. § 2702 is not a predicate "crime of violence" under § 4B1.2(a), and Defendant is not subject to a career offender sentencing enhancement. Accordingly, for Defendant's resentencing, the Court adopts the Probation Office's Guidelines range as calculated in the Amended Supplemental Sentencing Report, dated October 5, 2017, and rejects the Government's alternative calculation.

Section 4B1.1 provides enhanced offense levels when (1) the defendant was at least eighteen years old at the time the defendant committed the instant offense of conviction; (2) the instant offense of conviction is a felony that is either a crime of violence or a controlled substance offense; and (3) the defendant has at least two prior felony convictions of either a crime of violence or a controlled substance offense. The parties do not dispute that Defendant's current conviction is for a "controlled substance offense," that he is 18 years of age, and that he has at least one predicate conviction for a "controlled substance offense."

The Amended Supplemental Sentencing Report corrects the calculation in the Supplemental Report for Resentencing, dated September 28, 2017, which the parties and the Probation Office agreed miscalculated the Guidelines range irrespective of the parties' dispute over the interpretation of § 4B1.2.

Under the Amended Supplemental Sentencing Report calculation, Defendant's base offense level is 20 pursuant to § 2K2.1(a)(4). After a three-level reduction for acceptance of responsibility, Defendant's total offense level is 17. Because his criminal history category is Category IV, his resulting Guidelines range is 37-46 months.
Under the Government's approach, the Defendant's offense level would be increased to 32 pursuant to a career offender enhancement under § 4B1.1(b)(3). After a three-level reduction for acceptance of responsibility, Defendant's total offense level would be 29. Additionally, under § 4B1.1(b), Defendant's criminal history category would be fixed at Category VI. The resulting Guidelines range would be 151-188 months.

U.S.S.G. § 4B1.2 (eff. Nov. 1, 2016).

United States v. Marrero , 743 F.3d 389, 399-400 (3d Cir. 2014) (citing Taylor v. United States , 495 U.S. 575, 598, 110 S.Ct. 2143, 109 L.Ed.2d 607 (1990) ; Descamps v. United States , 570 U.S. 254, 133 S.Ct. 2276, 2283, 186 L.Ed.2d 438 (2013) ), superseded by 2016 revision to Sentencing Guidelines with respect to discussion of the residual clause of § 4B1.2(a).

Taylor , 495 U.S. at 598, 110 S.Ct. 2143 ; Marrero , 743 F.3d at 399.

See United States v. Gorny , 655 Fed.Appx. 920, 924 (3d Cir. 2016) (non-precedential), cert. denied , --- U.S. ----, 137 S.Ct. 2107, 197 L.Ed.2d 905 (2017) (citing Mathis v. United States , --- U.S. ----, 136 S.Ct. 2243, 195 L.Ed.2d 604 (2016) ; Descamps , 133 S.Ct. at 2281 ; United States v. Brown , 765 F.3d 185, 191 (3d Cir. 2014) ; and United States v. Hopkins , 577 F.3d 507, 511 (3d Cir. 2009) ). Authority interpreting the definition of "violent felony" under the ACCA has generally been applied to the definition of "crime of violence" under U.S.S.G § 4B1.2 in the Third Circuit because of the similarity in language of the two provisions. See, e.g., Gorny , 655 Fed.Appx. at 924 ; United States v. Jones , 740 F.3d 127, 133, n.1 (3d Cir. 2014) ; Hopkins , 577 F.3d at 511 ; United States v. Fisher , No. 01-769-01, 2017 WL 1426049, at *4 n.4 (E.D. Pa. Apr. 21, 2017).

Mathis , 136 S.Ct. at 2251.

United States v. Dahl , 833 F.3d 345, 350 (3d Cir. 2016) (citation omitted).

Descamps , 133 S.Ct. at 2284.

Shepard v. United States , 544 U.S. 13, 26, 125 S.Ct. 1254, 161 L.Ed.2d 205 (2005).

18 Pa. Cons. Stat. § 2702(a) (as amended Feb. 2, 1990, eff. Mar. 3, 1990).

Mem. Op., United States v. McNeal , No. 13-cr-16 (E.D. Pa. Sept. 26, 2017).

Notably, there are no Shepard records to establish whether Defendant was accused of first or second degree aggravated assault. Such information would have at least narrowed the offense to either subsections (a)(1) and (a)(2) (first degree felonies) or subsections (a)(3), (a)(4), and (a)(5) (second degree felonies).

867 A.2d 594, 597 (Pa. Super. Ct. 2005).

Under § 211.1 of the Model Penal Code, a person is guilty of aggravated assault if he:
(a) attempts to cause serious bodily injury to another, or causes such injury purposely, knowingly or recklessly under circumstances manifesting extreme indifference to the value of human life; or
(b) attempts to cause or purposely or knowingly causes bodily injury to another with a deadly weapon.
Model Penal Code § 211.1, Assault. Subsections (a)(2), (a)(3), and (a)(5) do not fit within the scope of either of these definitions.

The Court sees no reason why such an approach would not be permissible for a divisible statute, but the parties have not briefed the issue. Moreover, as explained, infra n. 52, such an approach would make no difference here because § 2702(a)(2) of the statute would satisfy neither the force clause nor the enumerated offense clause.

--- U.S. ----, 136 S.Ct. 2272, 2278, 195 L.Ed.2d 736 (2016).

United States v. Parson , 955 F.2d 858, 866 (3d Cir. 1992).

Id. at 866.

Id.

Id. at 874.

The sole difference between the language of 18 U.S.C. § 16(a) and the language of § 4B1.2(a)(1) is that 18 U.S.C. § 16(a) includes the use of force "against the person or property of another," while U.S.S.G. § 4B1.2(a)(1) is limited to the use of force "against the person of another."

Id.

Tran v. Gonzales , 414 F.3d 464, 470 (3d Cir. 2005).

Popal v. Gonzales , 416 F.3d 249, 254 (3d Cir. 2005).

Id.

United States v. Otero , 502 F.3d 331, 335 (3d Cir. 2007).

Fisher , 2017 WL 1426049, at *7 ; United States v. Weygandt , No. 9-cr-324, 2017 WL 818844, at *2 (W.D. Pa. Mar. 2, 2017) ; United States v. Harris , 205 F.Supp.3d 651, 671 (M.D. Pa. 2016).

See United States v. Chapman , 866 F.3d 129, 133 (2017) (holding that the term "use of physical force" in § 4B1.2(a)(1)"involves the intentional employment of something capable of causing physical pain or injury to another person," even though the actor need not directly strike the victim. (emphasis added) ); see also United States v. Lee , 612 F.3d 170, 196 (3d Cir. 2010) (holding, in light of language in the Supreme Court's decision in Begay v. United States , 553 U.S. 137, 128 S.Ct. 1581, 170 L.Ed.2d 490 (2008), that "a conviction for mere recklessness cannot constitute a crime of violence" for purposes of a career offender enhancement).

Voisine , 136 S.Ct. at 2278

Id. at 2280.

Id. at 2279.

Id. at 2278, 2280-81.

Chapman , 866 F.3d at 133 ("the use of physical force involves the intentional employment of something capable of causing physical pain or injury to another person").

See United States v. Howell , 838 F.3d 489, 501 (5th Cir. 2016) (holding, based on Voisine , that the Texas aggravated assault statute that included a mens rea of recklessness may qualify as crime of violence under the force clause of § 4B1.2 ); United States v. Pam , 867 F.3d 1191, 1208-09 (10th Cir. 2017) (concluding, based on Voisine , that "the offense of willfully shooting at or from a motor vehicle with reckless disregard for the person of another" constitutes a violent felony under the ACCA); United States v. Fogg , 836 F.3d 951, 954 (8th Cir. 2016) (holding, based on Voisine , that a provision of a Minnesota statute that proscribed the reckless discharge of firearm "at or toward a person" qualified as a "violent felony" under the ACCA); but see United States v. Fields , 863 F.3d 1012, 1015 (8th Cir. 2017) (distinguishing Fogg , and declining to extend Voisine in the context of § 4B1.2 ).

Bennett v. United States , 868 F.3d 1, 18-23 (1st Cir. 2017), opinion withdrawn and vacated as moot , 870 F.3d 34 (1st Cir. 2017) (declining to extend Voisine 's interpretation of § 921(A)(33)(A) to the definition of "violent felony" under the ACCA based on the rule of lenity and ambiguity created by differences in the text and purpose of the two statutes).

U.S.S.G. § 4B1.2(a)(1) (emphasis added).

See Bennett , 868 F.3d at 18-20 (discussing the difference in language between the text of the ACCA and 921(a)(33)(A) and concluding that "while Voisine 's review of the text of § 921(a)(33)(A) does make clear that a reckless assault involves a deliberate act to endanger another and thus qualifies as a crime that has as an element a 'use ... of physical force,' Voisine does not make similarly clear that a reckless assault involves the deliberate decision to employ force 'against the person of another.' ").

See Voisine , 136 S.Ct. at 2280, n.4 ("our decision today concerning § 921(a)(33)(A)'s scope does not resolve whether § 16 includes reckless behavior. Courts have sometimes given those two statutory definitions divergent readings in light of differences in their contexts and purposes, and we do not foreclose that possibility with respect to their required mental states.") (citing United States v. Castleman , --- U.S. ----, 134 S.Ct. 1405, 1411, n.4, 188 L.Ed.2d 426 (2014) (interpreting "force" in § 921(a)(33)(A) to encompass any offensive touching, while acknowledging that federal appeals courts have usually read the same term in § 16 to reach only "violent force") ); see also Johnson v. United States , 559 U.S. 133, 143, 130 S.Ct. 1265, 176 L.Ed.2d 1 (2010) (rejecting as "unfounded" the Government's assertion that the Supreme Court's interpretation of the definition of "violent felony" under the ACCA will affect the Government's ability to enforce § 922(g)(9) ).

Voisine , 136 S.Ct. at 2278.

The disparity in the Guidelines range calculations at issue in this case illustrates the consequences of a predicate "crime of violence" as defined in § 4B1.2 during sentencing. The ACCA and 18 U.S.C. § 16 similarly define predicate offenses that result in the exclusion of offenders from the community. See 18 U.S.C. § 924(e) and U.S.S.G. § 4B1.4 (prescribing a fifteen-year mandatory minimum sentence as well as a sentencing enhancement for offenders with a sufficient number of predicate offenses); see also 8 U.S.C. §§ 1101(a)(43)(F), 1227(a)(2)(A)(iii) (authorizing deportation of aliens with prior convictions for "crimes of violence" as defined under § 16 ).

See § 4B1.2, Editor's and Revisor's Notes (2016).

955 F.2d at 866.

United States v. Flemming , 617 F.3d 252, 261 (3d Cir. 2010), as amended (Sept. 27, 2010). See also Bennett v. United States , 868 F.3d 1, 3 (1st Cir.), opinion withdrawn and vacated , 870 F.3d 34 (1st Cir. 2017).

Although the Government has not asked the Court to separately determine whether any subsection of § 2702(a) that fails to satisfy the force clause would instead satisfy the enumerated offense clause, the Court notes that subsection (a)(2), which fails to satisfy the force clause, would also fail to satisfy the enumerated offense clause because it exceeds the scope of the generic offense of aggravated assault.
Courts have held that the Model Penal Code definition of aggravated assault is the generic definition of "aggravated assault." See United States v. Rede-Mendez , 680 F.3d 552, 557 (6th Cir. 2012) ("We have recognized the Model Penal Code definition of aggravated assault as the generic definition for the purpose of deciding whether a crime with that label is a crime of violence, at least in states which have merged the crimes of assault and battery."); United States v. Torres-Diaz , 438 F.3d 529, 536 (5th Cir. 2006) ("Our primary source for the generic contemporary meaning of aggravated assault is the Model Penal Code"). Subsection(a)(2) does not fall within the Model Penal Code definition of aggravated assault because it does not require either recklessness "manifesting extreme indifference to the value of human life" or the "use of a deadly weapon." Model Penal Code § 211.1, Assault.

The Court notes that multiple district courts in this Circuit have held that aggravated assault under § 2702(a)(1) falls outside the force clause of the ACCA because it can be committed by an act of omission. See Fisher , 2017 WL 1426049, at *7 ; Weygandt , 2017 WL 818844, at *2 ; Harris , 205 F.Supp.3d at 671.